UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCHUBERT G.,[1] | ) |
|           Plaintiff, | ) No. 21 CV 3393 ) ) |
| v. | ) Magistrate Judge Young B. Kim ) |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | ) ) ) May 21, 2024 |
|           Defendant. | ) ) |

**MEMORANDUM OPINION and ORDER**

Schubert G. seeks disability insurance benefits ("DIB") asserting that he is disabled by a right knee impairment, hypertension, and obesity. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. For the following reasons, Schubert's remand request is denied, and the Commissioner's final decision is affirmed:

**Procedural History**

Schubert filed a DIB application in March 2019, claiming a disability onset date of July 31, 2013. (Administrative Record ("A.R.") 26.) After his application was denied initially and upon reconsideration at the administrative level, (id. at 65-73, 75-83), he sought and was granted a hearing before an Administrative Law Judge ("ALJ"), (id. at 99-123). Schubert appeared with his attorney at an October 2020

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Schubert's first name and last initial in this opinion to protect his privacy to the extent possible.

1

telephonic hearing, at which he and a vocational expert ("VE") testified. (Id. at 45-64.) The ALJ ruled on October 30, 2020, that Schubert is not disabled. (Id. at 23-41.) On January 13, 2021, the Appeals Counsel denied Schubert's request for review, (id. at 13-15), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Schubert then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 9).

## Analysis

Schubert argues that the ALJ erred by not accounting for all of his physical limitations when formulating his residual functional capacity ("RFC") or when posing a hypothetical to the VE and by improperly analyzing opinion evidence. (R. 20, Pl.'s Mem. at 7-15.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must

2

say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford [Plaintiff] meaningful judicial review.'" *Warnell v. O'Malley,* 97 Fed.4th 1050, 1054 (7th Cir. 2024). Having considered the arguments and record under this standard, the court finds that remand is not warranted here because the ALJ supported her analysis with substantial evidence.

A.     **Opinion Evidence**

The court begins with Schubert's argument that the ALJ erred by rejecting several of the opinions of his treating physicians, Dr. Stephen Arndt and Dr. Brian Forsythe, (R. 9, Pl.'s Mem. at 8-12), because any error in this regard would require a reexamination of the RFC. The ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and explaining the most important factors—supportability and consistency. *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires the ALJ to consider the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how

3

the medical opinion is consistent with all other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). After assessing these factors, the ALJ may, but is not required to, explain how she considered three other factors in her analysis—the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict the source's opinion. *Id.* §§ 404.1520c, 416.920c(b)(2).

As an initial matter, the ALJ imposed greater restrictions in the RFC than were suggested by any of the opinion evidence upon which she relied, having credited only two of Dr. Arndt's opinions and none of Dr. Forsythe's. (A.R. 37 (finding Dr. Arndt's June 2015 opinion that claimant previously lifted up to 200 pounds at his previous plumbing job and can no longer do so "persuasive and not inconsistent with a limitation to sedentary work"), 38 (finding "somewhat supportable, consistent, and persuasive" Dr. Arndt's December 2017 opinion that Schubert had "likely permanent" limitations and "could not lift greater than forty-five pounds," and should not "crouch, kneel, crawl, or squat" but also stating Schubert "could do these on an occasional frequency").) The ALJ ultimately incorporated into the RFC Dr. Arndt's opinion as to kneeling and crouching, finding that Schubert could do so "no more than occasionally," but imposed greater restrictions as to crawling, finding that Schubert could never perform such task. (Id. at 38.)

In turn, the ALJ found the state agency medical consultant opinions that Schubert could perform light work "somewhat supportable, consistent, and persuasive" but concluded "that greater limitations are supported by the record." (Id. at 36.) The ALJ also contrasted Schubert's June 2019 consultative exam with the

4

other medical evidence,[2] reasoning that Schubert was able to "get on and off the exam table with no difficulty" and "walk greater than fifty feet," could stand and walk on his toes bilaterally, had "5/5 power in all limbs," and had right knee x-rays showing "no acute fracture or dislocation, interval ACL reconstruction changes, and bony alignment within normal limits." (Id. at 39 (citing id. at 415, 433).)

Schubert argues that the ALJ improperly analyzed the remainder of his treating physicians' opinions, rejecting them because they were either conclusory, based on subjective reports, not medically necessary, inconsistent with the record, or lacked a function-by-function analysis. (R. 20, Pl.'s Mem. at 8-12.) The court disagrees. While a physician is not required to submit a function-by-function assessment, it is not reversible error for an ALJ to discount an opinion for the physician's failure to do so, provided that the ALJ supplies "other supported reasons for discounting the opinion." *Regina P. v. Saul*, No. 19 CV 3155, 2020 WL 4349888, at *7 (N.D. Ill. July 29, 2020). Such is the case here, where the ALJ provided multiple reasons for discounting Dr. Arndt and Dr. Forsythe's opinions.

First, when assessing Dr. Arndt's and Dr. Forsythe's opinions, the ALJ ultimately discounted those that simply said that Schubert could not work or was limited to part-time or "light duty" work without commenting on his functional limitations. (A.R. 37-38 (citing id. at 392 (Dr. Arndt's October 2013 opinion that

---

[2] The ALJ distinguished Schubert's 2019 consultative exam from Dr. Arndt's September 2017 opinion that Schubert be limited to part-lime work, noting that the consultative exam did not support that part-time work was medically necessary. (Id. at 39 (citing id. at 305-06).)

5

Schubert was to continue to be off work), 378 (Dr. Arndt's April 2014 opinion that Schubert was not to work), 331 (Dr. Arndt's August 2015 opinion "still no work until [Schubert] is comfortable"), 275, 277 (Dr. Forsythe's November 2015 opinion Schubert is to remain out of work), 259, 266 (Dr. Forsythe's January 2016 opinions Schubert is "out of work"), 255, 258 (Dr. Forsythe's February 2016 opinions Schubert will remain off work), 251 (Dr. Forsythe's March 2016 opinion Schubert was to remain out of work), 247 (Dr. Forsythe's April 2016 opinion Schubert was to remain out of work), 243 (Dr. Forsythe's May 2016 opinion that Schubert was to remain out of work).) Schubert argues that this was improper because the ALJ ignored the context surrounding these opinions. (R. 20, Pl.'s Mem. at 11.) But "statements that you are or are not . . . able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive" and require no explanation of how they factored into the ALJ's ultimate findings. 20 C.F.R. § 404.1520b(c)(3)(1); *see Ellison v. Kijakazi*, No. 22-3134, 2023 WL 8794989, at *3 (7th Cir. Dec. 20, 2023) ("[A]n ALJ may discount medical opinions that are 'conclusory and not supported by any clinical basis.'") (quoting *Cooley v. Berryhill*, 738 Fed. Appx. 877, 880 (7th Cir. 2018)). The court agrees that these opinions reach conclusions reserved for the Commissioner and, as such, the ALJ was not required to "provide any analysis about how [she] considered such evidence," 20 C.F.R. § 404.1520b(c)(3)(1). Accordingly, there was no error here.

Second, the ALJ likewise did not err when rejecting Dr. Arndt's opinions that were based solely on Schubert's subjective complaints, including an August 2015 visit

6

during which Dr. Arndt opined that Schubert should refrain from work "until he is comfortable," (A.R. 37 (citing id. at 331 (Dr. Arndt's August 2015 opinion "every time we think we are about to get him back to work, he seems to have sort of a relapse or does worse")); see also id. at 311-12 (Dr. Arndt's July 2017 note "he does not have a desire to go back to work" and "[h]e is still struggling and having difficulty finding work that he likes or can tolerate").) Indeed, an ALJ need not rely on a medical opinion that—like here—is "not supported by treatment notes or the record as a whole, or if it appears to be based on the patient's subjective allegations." *Ephrain S. v. Berryhill*, 355 F. Supp. 3d 738, 746 (N.D. Ill. 2019).

Third, Schubert further contends that the ALJ ignored the context surrounding Dr. Arndt's restrictions to "light duty" or part-time work and failed to explain why those restrictions are inconsistent with the record and not medically necessary. (R. 20, Pl.'s Mem. at 9-10.) The court again disagrees. First, the ALJ did not err in rejecting Dr. Arndt's February, May, and June 2015 opinions restricting Schubert to "light duty" work because the notes commented on Schubert's RFC without describing his functional abilities or limitations and are therefore neither valuable nor persuasive. (See A.R. 37 (citing id. at 344 (February 2015 note that Schubert could return to "light duty" work); 336 (May 2015 note that Schubert was to return to "light duty" work); 334 (June 2015 note that Schubert was to be kept at "light duty" work))); *see also* 20 C.F.R. § 404.1520b(c)(3)(v).[3] The ALJ also recognized

---

[3] Schubert argues that, to the extent the ALJ was unclear about the definition of "light duty" work, she could have contacted Dr. Arndt "for clarification." (R. 20, Pl.'s Mem. at 12.) But the ALJ had no duty to do so. *Skinner v. Astrue*, 478 F.3d 836, 843

7

that Dr. Arndt described Schubert's range of motion and stability as "excellent" and that he was "finally doing well" during this time. (A.R. 37 (citing id. at 344, 336, 334).)

The ALJ also did not err in rejecting Dr. Arndt's 2017 opinions limiting Schubert to part-time work because the medical notes do not provide any analysis supporting such restrictions. *Michael T. v. Kijakazi*, No. 22 CV 2883, 2023 WL 7281819, at *4-5 (N.D. Ill. Nov. 3, 2023) ("[A]n ALJ may discount a physician's opinion when it is contradicted by other substantial evidence in the record."). As Schubert notes, Dr. Arndt hoped to return Schubert to his full-time job as a plumber but in May 2017 imposed restrictions on the number of hours per day and days per week he could work. (R. 20, Pl.'s Mem. at 10 (citing A.R. 316 (May 2017 opinion restricting Schubert to work five hours every other day and alternate standing and sitting every thirty minutes but stating "[n]o issues at this point in time"); 305-06 (September 2017 note reducing Schubert to four hours of work every other day and reporting Schubert's statement that "[i]t is about the same, it is still swelling at work"); 301-02 (November 2017 note restricting Schubert to working two days per week even though "[h]is exam is essentially unchanged")).) Schubert points to his subjective reports included in the medical notes which show that he suffered from pain, swelling, and stiffness, (R. 20, Pl.'s Mem. at 10), but the ALJ explained that Schubert "was noted to be doing well" at the same visit in May 2017 during which Dr. Arndt imposed

---

(7th Cir. 2007) (no duty to contact physician where record contained adequate information from which to make a disability determination).

8

restrictions and indicated that Schubert "did not have a desire to go back to work" and "was struggling and having difficulty finding work that he liked or could tolerate" a few months later. (A.R. 34-35.) Moreover, Dr. Arndt opined in December 2017 on Schubert's functional limitations and none of the "likely permanent" restrictions Dr. Arndt assessed included a limitation to part-time work. (Id. at 38 (citing id. at 298).) The court finds that the ALJ sufficiently explained her reasoning in rejecting Dr. Arndt's work restrictions and declines to reverse on this ground. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("[T]o find that the ALJ misjudged the evidence so significantly as to warrant reversal . . . would essentially put ourselves in the ALJ's shoes to re-weigh the evidence, a role that we wish to avoid."); *see also Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record.").

The ALJ further noted that Schubert's June 2019 consultative exam does not support the restriction to part-time work. (See A.R. 39 (citing id. at 415, 433 (June 2019 exam where Schubert could get on and off the exam table without difficulty, was able to walk greater than 50 feet without support, had non-antalgic gait without assistance, could heel to toe walk, could stand and walk on his toes bilaterally, was able to squat and rise with mild difficulty, had negative bilateral straight leg raise testing with normal lumbar range of motion, had 5/5 power in all limbs, and had right knee x-rays showing no acute fracture or dislocation, interval ACL reconstruction changes, and bony alignment within normal limits)).) And while Schubert complains

9

that the consultative exam was conducted two years after his visits with his treating physicians, (R. 20, Pl.'s Mem. at 10), Schubert himself testified at the hearing that his symptoms have not changed since that time, (A.R. 58 (Schubert testifying his symptoms have remained unchanged since his 2017 medical visits)). The court therefore finds that the ALJ supported her assessment with substantial evidence.

Finally, Schubert takes issue with the ALJ's finding that each of Dr. Arndt's and Dr. Forsythe's opinions were "inconsistent" with the other medical evidence, apart from the June 2015 and December 2017 opinions by Dr. Arndt upon which the ALJ partially relied. (A.R. 37-39 (citing id. at 243, 247, 252, 255, 258, 260, 266, 275, 277, 305, 306, 316, 331, 334, 336, 344, 378, 382, 392).) Schubert argues that the ALJ erred because she "failed to consider the consistency of all of these opinions with each other." (R. 20, Pl.'s Mem. at 9.) However, the question is not whether Dr. Arndt's opinions are consistent with his other opinions or consistent with Dr. Forsythe's opinions, but rather whether either physician's opinions are consistent with the medical record as a whole. *Gwendolyn P. v. Kijakazi*, No. 20 CV 3339, 2021 WL 5204848, at *9 (N.D. Ill. Nov. 9, 2021) (consistency requires an assessment of "how consistent an opinion is with the entire record as a whole, not only with another opinion"). And as the ALJ noted, Dr. Arndt and Dr. Forsythe's opinions are inconsistent in that they do not provide a functional analysis of Schubert's limitations, "as the record does not support that working part-time is medically necessary[.]" (A.R. 37-39.) In any event, the ALJ provided other reasons for discounting the opinions—finding that each was "unsupportable, inconsistent, and

10

unpersuasive"—crediting the objective medical evidence and rejecting evidence which appeared to be based on Schubert's subjective complaints. (Id.); *see Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). And the Seventh Circuit recently affirmed that ALJs "are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053. She has met that minimal standard here.

Moreover, Schubert concedes that the ALJ explained the inconsistency between two of the opinions and his June 2019 consultative exam. (R. 20, Pl.'s Mem. at 9; A.R. 38-39 (citing id. at 316 (Dr. Arndt's May 2017 restriction), 305-06 (Dr. Arndt's September 2017 restriction)).) And the ALJ referenced the objective evidence and subjective reports included in many of the other treatment notes in reviewing Schubert's medical history. (A.R. 33-34 (citing id. at 389 (Dr. Arndt's October 2013 note that Schubert's x-rays showed good position and alignment), 344 (Dr. Arndt's February 2015 note that Schubert had pain "really only with big lifting"), 336 (Dr. Arndt's May 2015 note that Schubert "had excellent range of motion and excellent stability"), 333 (Dr. Arndt's June 2015 note that Schubert "presented with full range of motion and no pain or discomfort"), 331 (Dr. Arndt's August 2015 note that "every time we think we are about to get him back to work, he seems to have some sort of a relapse or does worse"), 277 (Dr. Forsythe's November 2015 note that Schubert had "already regained significant range of motion in physical therapy"), 262-66 (Dr. Forsythe's January 2016 note that Schubert reported "persistent pain," and had an antalgic gait), 252 (Dr. Forsythe's March 2016 note that Schubert subjectively felt 40% normal), 243 (Dr. Forsythe's May 2016 note that Schubert

11

reported "knee joint swelling after three to four hours of standing on his feet" and 0% functionality of his right lower extremity)).) The ALJ's conclusion that Dr. Arndt and Dr. Forsythe's opinions as to Schubert's restrictions are "unsupportable," "inconsistent," or "unpersuasive" thus has the support of substantial evidence. *See Gibson v. Massanari*, 18 Fed. Appx. 420, 425 (7th Cir. 2001) (internal inconsistencies or inconsistencies with other evidence are good cause for rejecting medical evidence). Accordingly, the court does not find error with the ALJ's analysis of opinion evidence.

**B.     RFC Assessment**

Schubert argues that the ALJ did not account for all of his physical limitations in the RFC assessment or in the hypothetical presented to the VE. An RFC measures the tasks a person can perform given his limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When assessing the RFC, the ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Where the ALJ does not rely upon medical opinions, she must "thoroughly discuss[] the medical and other evidence," considering each of the claimant's "impairments and related function deficits," *Nina Joyce H. v. Saul*, No. 18 CV 4913, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020), and "describ[e] how the evidence supports each [RFC] conclusion," *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011). However, a flawed RFC generally will not justify remand unless the claimant identifies additional limitations

12

not already included in the RFC. *See Pavlicek v. Saul,* 994 F.3d 777, 784 (7th Cir. 2021).

Here, before turning to step four, the ALJ determined that Schubert has the RFC to perform "sedentary" work as defined in 20 C.F.R. § 404.1567(a) but imposed the following limitations:

> [Schubert] could never climb ladders, ropes, or scaffolds. [He] could no more than occasionally climb ramps or stairs, balance, stoop, crouch, kneel, bend, or twist. [He] could never crawl. Further, he was to be provided a sit-stand option allowing him to stand for 1-2 minutes after sitting for thirty minutes.

(A.R. 31.) Schubert asserts that the ALJ improperly omitted from the RFC his inability to sit or stand for long durations and his need to elevate and ice his right leg. (R. 20, Pl.'s Mem. at 12-15.)

The ALJ explained that the sit-stand option was based on: (1) Schubert's reports that he has trouble sitting and standing for long periods of time without aggravating his knee or experiencing discomfort; (2) his treating physician Dr. Arndt's medical opinions[4]; and (3) Schubert's history of hypertension, obesity, and myocardial infarction, because spending more time on his feet could place additional stress on his heart or knee. (A.R. 35-38.) Schubert now argues that the ALJ erred by not addressing "how [Schubert] has to manage his symptoms after sitting with his

---

[4] The ALJ ultimately found Dr. Arndt's May 2017 opinion that Schubert can work five hours every other day, alternating between standing and sitting every thirty minutes, "unsupportable, inconsistent, and unpersuasive" because the treating notes did not show that part-time work was medically necessary, but she noted that "[n]evertheless, this opinion is generally consistent with the sit-stand opinion that the undersigned imposed on" Schubert's RFC since Schubert would never be sitting for more than a half hour at a time. (A.R. 38 (citing id. at 316).)

13

leg bent." (R. 20, Pl.'s Mem. at 13.) But his own testimony is that he is able to sit for as long or longer than the RFC suggests. (See A.R. 52-53 (Schubert's testimony that he can sit for "not more than an hour" until he has to stand up); see also id. at 35 (citing id. at 414 (Schubert's report that he could "walk for thirty minutes at a time, stand for thirty minutes at a time, [and] sit for thirty minutes at a time")).) Schubert does not point to any evidence suggesting that more stringent sit-stand limitations are required, and he fails to explain what specific limitations are warranted in a revised RFC. *Jozefyk*, 923 F.3d at 498 (ruling any error in RFC was harmless because claimant cited no evidence of greater limitations and did not hypothesize any additional work restrictions); *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *3 (7th Cir. Dec. 21, 2021) (failure to explain RFC limitations with specific evidence is "fatal to [claimant's] challenge on appeal"); *Ferida H. M. v. O'Malley*, No. 22 CV 6341, 2024 WL 942552, at *8 (N.D. Ill. March 5, 2024) ("[Claimant] has not proposed what further limitations would be appropriate, which also diminishes the strength of her argument.")

Schubert also contends that the ALJ failed to account for his need to elevate and ice his right leg. (R. 20, Pl.'s Mem. at 14.) But the ALJ noted that "leg elevation is not documented in the record as medically necessary" and "the record does not show that the claimant is unable to stand and/or sit effectively so that he has to lie down or recline as a medical necessity." (A.R. 31 (citing id. at 180).) The ALJ cites to Schubert's self-report that he elevated his knee when he was struggling to perform a previous desk job. (Id. at 180.) Schubert cites to the same report and to a November

14

2017 medical note from Dr. Arndt, (R. 20, Pl.'s Mem. at 14 (citing A.R. 301)), which includes Schubert's subjective report that his pain "eases up with ice and elevation and rest." (A.R. 301.) But Dr. Arndt never provided treatment instructions requiring elevation. Nevertheless, the ALJ asked the VE about leg elevation at a sedentary job and the VE answered that an individual would be permitted to use a footstool to elevate his or her leg whereas an individual would not be permitted to elevate his or her leg to waist level. (Id. at 63.) Schubert does not point to anything in the record requiring him to elevate his leg at all, much less requiring him to elevate his leg to waist level.

As to icing his leg, the ALJ acknowledged Schubert's testimony that he typically iced his knee one to three times per day, as well as Dr. Arndt's recommendation that Schubert ice his knee. (Id. at 32, 35.) While the ALJ did not mention icing in her RFC assessment, Schubert's attorney failed to question the VE as to the effect that icing would have on one's ability to perform sedentary work—and Schubert does not contend that he is unable to ice his knee under the RFC assessed. (See R. 20, Pl.'s Mem. at 12-15); *Jozefyk*, 923 F.3d at 498 ("It is unclear what kinds of work restrictions might address [claimant's] limitations . . . because he hypothesizes none.")

15

## Conclusion

For the foregoing reasons, Schubert's request for remand is denied and the Commissioner's final decision is affirmed.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate**